**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF OKLAHOMA**

| | | |
|---|---|---|
| **LAMAUR PRICE,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Case No. CIV-21-100-GLJ** |
| | ) | |
| **ADAM R. TELLE,**[1] | ) | |
| **Secretary of the Department of the Army,** | ) | |
| | ) | |
| **Defendant.** | ) | |

## OPINION AND ORDER

This case arises out of Plaintiff Lamaur Price's employment at the McAlester Army Ammunition Plant ("Plant") in McAlester, Oklahoma. Plaintiff sues the United States, through the Secretary of the U.S. Department of the Army, alleging unlawful sex and gender discrimination in violation of Title VII. Defendant now seeks summary judgment. For the reasons set forth below, Defendant's Motion for Summary Judgment and Brief in Support [Docket No. 72] is GRANTED.

### I. Procedural History

Plaintiff filed the Complaint in this case on March 30, 2021, alleging causes of action based on age discrimination, prohibited personnel practices, and sex/gender discrimination. Docket No. 2. Defendant moved to dismiss Plaintiff's Amended Complaint on July 30, 2021 [Docket No. 15], and the motion was fully briefed by August

---

[1] On September 3, 2026, Adam R. Telle was appointed Acting Secretary of the Department of the U.S. Army. In accordance with Fed. R. Civ. P. 25(d), Mr. Telle is substituted for Daniel P. Driscoll as Defendant in this action.

27, 2021 [Docket Nos. 16-17]. On May 1, 2023, U.S. District Judge Jodi Dishman, serving as visiting District Judge in this case,[2] set the motion for hearing, which was ultimately held on August 18, 2023 [Docket Nos. 21-25]. At the hearing, Judge Dishman granted Defendant's motion to dismiss, stating the reasons on the record at the hearing and dismissing all three counts without prejudice. Plaintiff asked for leave to file a Second Amended Complaint as to Counts 1 and 3, and the Court ultimately gave Plaintiff until September 15, 2023, to request leave to file a Second Amended Complaint. Docket Nos. 25, 27-28.

Plaintiff filed his motion for leave to amend on September 15, 2023, and the motion was fully briefed by October 6, 2023 [Docket Nos. 31-33]. On May 2, 2025, the parties consented to U.S. Magistrate Judge jurisdiction pursuant to 28 U.S.C. § 636(c)(1) and Fed. R. Civ. P. 73(a), and this case was reassigned to the undersigned Magistrate Judge [Docket No. 34]. The Court granted the motion in part, allowing an amended complaint to proceed only on Plaintiff's claim for sex and/or gender discrimination. *See* Docket No. 35. Plaintiff filed his Second Amended Complaint [Docket No. 36] on July 21, 2025. Plaintiff moved

---

[2] The Northern and Eastern Districts of Oklahoma have experienced unprecedented caseloads and jurisdictional complexities since the Supreme Court's decision in *McGirt v. Oklahoma*, 591 U.S. 894 (2020). *McGirt* caused an immediate increase of nearly 200% in the number of criminal cases filed in the Northern District and more than 400% in the Eastern District. *See* U.S. Courts, *Judiciary Supplements Judgeship Request, Prioritizes Courthouse Projects* (Sept. 28, 2021), https://www.uscourts.gov/news/2021/09/28/judiciary-supplements-judgeship-request-prioritizes-courthouse-projects. This extraordinary number of criminal cases thrust into federal court, virtually overnight, is unlike anything ever seen in this Country's history. Indeed, the Supreme Court has since recognized the "significant challenge for the Federal Government and for the people of Oklahoma" in the wake of *McGirt*. *Oklahoma v. Castro-Huerta*, 597 U.S. 629, 635 (2022). Numerous federal courts have "noted *McGirt*'s tremendous impact." *United States v. Budder*, 601 F. Supp. 3d 1105, 1114 (E.D. Okla. 2022) (collecting cases), *aff'd* 76 F.4th 1007 (10th Cir. 2023).

to reconsider the Court's ruling, and the Court denied the motion [Docket Nos. 38, 41] on September 4, 2025. Following several extensions of the scheduling order, Defendant timely moved for summary judgment on September 4, 2026 [Docket No. 72]. The motion is now ripe.

## II. Legal Standards

Summary judgment is appropriate if the record shows that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine issue of material fact exists when "there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). The moving party must show the absence of a genuine issue of material fact, *see Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986), with the evidence taken in the light most favorable to the non-moving party, *Adickes v. S. H. Kress & Co.*, 398 U.S. 144, 157 (1970). However, "a party asserting that a fact cannot be or is genuinely disputed must support the assertion by . . . citing to particular parts of materials in the record . . . or . . . showing that the materials cited do not establish the absence or presence of a genuine dispute[.]" Fed. R. Civ. P. 56(c).

In employment discrimination cases, "[m]any of the highly fact-sensitive determinations involved in these cases are best left for trial and are within the province of the jury." *Lounds v. Lincare, Inc.*, 812 F.3d 1208, 1221 (10th Cir. 2015). "The rule in this Circuit . . . is that an employment discrimination suit will always go to the jury so long as the evidence is sufficient to allow the jury to disbelieve the employer's proffered reason for the employment action." *Beaird v. Seagate Tech., Inc.*, 145 F.3d 1159, 1177 (10th Cir.

1998) (Tacha, J., concurring in part) (citing *Randle v. City of Aurora,* 69 F.3d 441, 451-452 & n. 15 (10th Cir. 1995) ("[I]f this inferential evidence is sufficient to allow a plaintiff to prevail at trial, it is surely sufficient to permit a plaintiff to avoid summary judgment so that the plaintiff can get to trial.").

**III. Factual Basis**

As an initial matter, the Court notes that Defendant appropriately offered its statements of undisputed facts in accordance with Loc. Civ. R. 56.1(b), which requires a section stating the material facts to which it contends no genuine dispute exists. Plaintiff wholly failed to respond accordingly, as required by Rule 56.1(c), with "a section, *by correspondingly numbered paragraphs*, to the facts that the movant contends are not in dispute and shall state any fact that is disputed." (emphasis in original).[3] Plaintiff instead identifies some paragraphs that he disputes. Because the Court prefers to resolve cases on their merits, the Court will allow Plaintiff's citation to disputed facts. Any fact not explicitly disputed by identification of paragraph, however, will be considered admitted. *See also Amparan v. Demir*, 234 F. Supp. 3d 1110, 1116 (D.N.M. 2017) ("The Court will not consider the portions of the record that Plaintiffs have failed to [ ]properly reference under Rule 56.1(b). Although the Court views the facts in a summary judgment motion favorably to the non-movant, there is no requirement that the Court do the work of Plaintiffs' counsel and sift through the record in an attempt to find support for Plaintiffs'

[3] Plaintiff compounded this error by first failing to respond to the summary judgment motion entirely, only seeking leave to file a response out of time after being prompted by the Court rather than moving to do so upon immediate notice of the error. *See* Docket Nos. 72, 74, 75-77.

factual allegations.") (citing *Mitchell v. City of Moore, Oklahoma*, 218 F.3d 1190, 1199 (10th Cir. 2000) ("The district court was not obligated to comb the record in order to make [plaintiff's] arguments for him.")).

The general undisputed facts reflect that Plaintiff is an employee at the Plant. In August 2019, the Plant posted a temporary supervisory management position at the Plant. In December 2019, the Plant posted a position for a permanent supervisory management analyst. Plaintiff, a black male,[4] applied for both, but he was chosen for neither. Selecting official Jeffrey Dugan chose a female employee, Lacy Toby, for the temporary position. Dugan stated that he chose Toby because he had worked with her before, and she was a project manager over multi-million-dollar projects, worked well with customers and headquarters, conducted herself well in meetings, and he was familiar with her. Docket No. 72, Ex. 1, p. 4. Dugan was not familiar with Plaintiff. *Id.* Plaintiff and Toby had different supervisors and different job duties at the time of the temporary job posting.

When Dugan selected Toby, her resume was submitted for qualification review and Toby was asked to update and resubmit her resume so that her jobs at various pay scale levels could be evaluated for a determination as to whether she was qualified for the position. Toby had grouped job experience and 3 pay levels ("GS 7/9/11"), which meant that the reviewer was unable to determine her GS-11 experience, particularly as it related

---

[4] Plaintiff did not originally raise a complaint of race discrimination in this case, and has repeatedly been denied leave to add such a claim when he untimely attempted to do so. *See* Docket Nos. 35, 41. He nevertheless repeatedly attempts to make arguments based on Plaintiff's race in combination with Plaintiff's sex/gender. The Court acknowledges Plaintiff's race here but does not further address it in the context of his claim for sex/gender discrimination.

to budget, manpower, and financial analysis. Docket No. 78, Ex. 5. Toby made the requested changes and was ultimately selected for the temporary position. Plaintiff argues that Dugan gave "illegal" assistance to Toby in helping her acquire the position.

As to the permanent position, Human Resources Specialist Adrene McNutt stated in a September 14, 2020, Declaration that Plaintiff had not qualified for the permanent position because he lacked supervisory and budgeting skills when compared against the position description. Out of the nine applicants, McNutt identified three people qualified for the position, all women. Docket No. 72, Ex. 4, pp. 2-3. While McNutt did not recall speaking with Plaintiff about the positions in this case, they spoke in 2020 and she told him to update his resume to be more detailed for specific positions for which he is applying. *Id.*, p. 4.

Selecting official Todd Stone ultimately chose Toby for the permanent position, and she was chosen out of three applicants for the position. Stone's declaration states that he selected Toby because of her extensive background in financials, past experience on the Analysis team, and as a Technical Writer and Bomb Program Manager, and that she had the "full circle of what you would want from a financial analysis perspective." Docket No. 72, Ex. 5, p. 2. He further stated that another candidate, Stacy Harkey, had similar qualifications, and that both Toby and Harkey were "good candidates." *Id.* All three qualified applicants were interviewed for the position, and Toby was ultimately chosen.

**IV. Analysis**

Plaintiff's first cause of action alleges sex and/or gender discrimination based on a failure to promote. Where, as here, a Title VII plaintiff relies on indirect proof of

discrimination, we apply the three-part burden-shifting framework announced in *McDonnell Douglas Corp v. Green*, 411 U.S. 792, 802-805 (1973). Under this framework:

> "[A] plaintiff must first "raise a genuine issue of material fact on each element of the prima facie case, as modified to relate to differing factual situations." *Morgan v. Hilti, Inc.*, 108 F.3d 1319, 1323 (10th Cir. 1997) (citation omitted). The burden then "shifts to the employer to offer a legitimate nondiscriminatory reason for its employment decision." *Id.* If the employer does so, "the burden then reverts to the plaintiff to show that there is a genuine dispute of material fact as to whether the employer's proffered reason for the challenged action is pretextual—*i.e.*, unworthy of belief." *Id.* (internal quotation marks omitted).

*Bekkem v. Wilkie*, 915 F.3d 1258, 1267 (10th Cir. 2019). Defendant's burden at the second stage to offer a legitimate nondiscriminatory reason is a burden of production, not persuasion. *See Texas Dep't of Cmty. Affs. v. Burdine*, 450 U.S. 248, 254 (1981) ("The burden that shifts to the defendant, therefore, is to rebut the presumption of discrimination by producing evidence that the plaintiff was rejected, or someone else was preferred, for a legitimate, nondiscriminatory reason. The defendant need not persuade the court that it was actually motivated by the proffered reasons."). The burden then returns to Plaintiff on the issue of pretext. *See, e.g.*, *Adamson v. Multi Cmty. Diversified Servs., Inc.*, 514 F.3d 1136, 1145-1146 (10th Cir. 2008); *see also Morman v. Campbell County Memorial Hosp.*, 632 Fed. Appx. 927, 933 (10th Cir. 2015) ("Under *McDonnell Douglas,* the plaintiff must first prove a prima facie case of discrimination. If she does so, then the burden 'shifts to the defendant to produce a legitimate, non-discriminatory reason for the adverse employment action.' If the defendant provides such a reason, 'the burden then shifts back to the plaintiff to show that the plaintiff's protected status was a determinative factor in the

employment decision or that the employer's explanation is pretext.'") (quoting *Khalik v. United Air Lines*, 671 F.3d 1188, 1192 (10th Cir. 2012)).

**A. Prima Facie Case**

Generally, to establish a prima facie case of discrimination based on a failure to promote, a plaintiff must show that (1) Plaintiff belongs to a protected class; (2) Plaintiff applied for an available position for which he was qualified; and (3) Plaintiff "was rejected under circumstances which give rise to an inference of unlawful discrimination." *Tabor v. Hilti, Inc.*, 703 F.3d 1206, 1216 (10th Cir. 2013) (quoting *Tex. Dep't of Cmty. Affs. v. Burdine*, 450 U.S. 248, 253 (1981)). Defendant asserts that Plaintiff has not met the burden to establish a prima facie case of sex/gender discrimination.

Historically, "in cases where the plaintiff is a member of a historically favored group, the Tenth Circuit has instructed that 'heightened standards are necessary for a prima facie showing to preserve the integrity of [Title VII] and Congress's intent in enacting it.'" *Bowen v. City & Cnty. of Denver, Denver Sheriff Dep't*, 2025 WL 1101152, at *2 (D. Colo. Apr. 14, 2025) (quoting *Adamson*, 514 F.3d at 1144). Plaintiff, as a male, would have thus been subject to the heightened standard. The Supreme Court recently abrogated this heightened standard, however, holding that "[b]y establishing the same protections for every 'individual'—without regard to that individual's membership in a minority or majority group—Congress left no room for courts to impose special requirements on majority-group plaintiffs alone." *Ames v. Ohio Dep't of Youth Servs.*, 605 U.S. 303, 310 (2025). Accordingly, "the standard for proving disparate treatment under Title VII does not vary based on whether or not the plaintiff is a member of a majority group." *Id.*

Although Plaintiff is a member of a majority group, the Court recognizes that Title VII proscribes "'discriminatory preference for any group, minority *or majority*[.]'" *Id.* (quoting *Griggs v. Duke Power Co.*, 401 U.S. 424, 431 (1971)). Further, it is not disputed that Plaintiff applied for a position and was not selected. The parties' disagreement centers on the third element, which requires Plaintiff to prove that the circumstances surrounding the Plant officials' failure to promote him give rise to an inference of discrimination. Defendant's failure to promote Plaintiff constitutes an adverse employment action as it "constitutes a significant change in employment status, such as hiring, firing, *failing to promote*, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits." *Burlington Industries, Inc. v. Ellerth*, 524 U.S. 742, 761 (1998) (emphasis added); *see also Wilson v. Harvey*, 156 Fed. Appx. 55, 58 (10th Cir. 2005) ("An adverse employment action is an indispensable prerequisite in a Title VII disparate treatment case that contains no direct evidence of intentional discrimination."). The question, then, is whether the challenged action occurred under circumstances giving rise to an inference of gender or sex discrimination.

"Plaintiff's burden at the prima facie stage is he must show that he was rejected under circumstances that give rise to an inference of unlawful discrimination." *Hickles v. FedEx Corp.*, 2026 WL 214343, at *10 (D. Kan. Jan. 28, 2026). Plaintiffs have numerous ways to show an inference of discriminatory motive:

> actions or remarks made by decisionmakers that could be viewed as reflecting a discriminatory animus . . ., preferential treatment given to employees outside the protected class . . ., in a corporate downsizing, the systematic transfer of a discharged employee's duties to other employees . . ., or a pattern of recommending the plaintiff for positions for which []he is not

> qualified [or over-qualified] and failure to surface plaintiff's name for positions for which []he is well-qualified.

*Plotke v. White*, 405 F.3d 1092, 1101 (10th Cir. 2005) (quotation omitted). Another way to show an inference is to demonstrate that Plaintiff was treated differently than a similarly situated employee. *See Mitchell v. Kansas City Kansas Sch. Dist.*, 714 Fed. Appx. 884, 887 (10th Cir. 2017) (The district court "articulated the third element as requiring evidence that an employer treated similarly situated employees differently, which, as indicated above, is one way to show adverse action under circumstances creating an inference of discrimination[.]"). "Employees are 'similarly situated' if they 'deal with the same supervisor and are subject to the same standards governing performance evaluation and discipline.'" *Sasser v. Salt Lake City Corp.*, 772 Fed. Appx. 651, 663 & n.17 (10th Cir. 2019) (quoting *Aramburu v. Boeing Co.*, 112 F.3d 1398, 1404 (10th Cir. 1997) (citations omitted)). "For purposes of a failure-to-promote or interview theory, the relevant 'supervisor' is 'the supervisor with responsibility for promoting or recommending promotion.'" *Id.* n.17 (quoting *Muhleisen v. Principi*, 73 Fed. Appx. 320, 323 (10th Cir. 2003)).

Plaintiff contends that he and Toby were similarly situated because they both sought the same promotion, making them competing candidates in identical situations. Defendant contends that the ultimately selected employee, Toby, was not similarly situated to Plaintiff when Plaintiff expressed interest in the temporary supervisory position or the permanent supervisor position because they did not share the same supervisor, job duties,

or responsibilities at the time they applied for the position, and they were subject to different performance reviews.

Plaintiff asserts that Toby received "illegal" assistance in submitting her resume because she was asked to update her resume for re-evaluation. Defendant contends that the Civilian Personnel Advisory Center ("CPAC") only requested clarification as to Toby's experience and asked her to further break it down so that CPAC could evaluate whether she was qualified. Defendant further argues that this issue goes to Plaintiff's lack of qualifications rather than any gender discrimination, in that Toby had more experience in areas of budgeting analysis and on the financial side, where Plaintiff lacked experience in supervisory, budgeting, and analytical areas. Based on *Sasser*'s definition of "similarly situated," the Court finds Plaintiff theoretically meets a prima facie case, when the evidence is coupled with his allegations regarding appointing official Dugan's efforts to update Toby's resume to delineate her experience at the three pay grades in order to appoint her to the temporary position.

However, while it is clear Toby was selected over Plaintiff for both the temporary and permanent positions, there is no nexus between Plaintiff's gender and the Plant's treatment of him other than the fact they are of different genders. By any standard, Plaintiff is responsible for providing some evidence that he was not promoted *because of* his gender. *Gad v. Kansas State Univ.*, 2016 WL 74399, at *14 (D. Kan. Jan. 6, 2016) ("Plaintiff needs to direct the Court to *some evidence* that the circumstances around Defendant's refusal to initiate the graduate faculty process give rise to an inference of gender discrimination. Plaintiff fails to do so. She fails to identify any discriminatory gender-based comments or

actions. She fails to identify any preferential treatment given to similarly-situated male employees. Plaintiff simply offers speculation that gender discrimination occurred. Thus, Plaintiff cannot establish a prima facie case of gender discrimination with regard to her graduate faculty claim."). Moreover, Plaintiff has not come forward with evidence that he was qualified for the positions, instead arguing that the financial and budget skills argument proffered by Defendant is a "false narrative" despite the plain language of the job posting identifying budget as a substantial requirement, as discussed further below. *See, e.g.*, *Woods v. Edelman Fin. Engines, LLC*, 2024 WL 3936473, at *7 (D. Kan. Aug. 26, 2024) (Plaintiff's failure to demonstrate how he satisfied the qualifications for the position fatal to establishing prima facie failure to promote claim).

**B. Legitimate, Nondiscriminatory Reason**

Assuming *arguendo* that Plaintiff satisfies the burden at the prima facie stage, Defendant meets its burden of articulating a legitimate, nondiscriminatory reason, namely that Plaintiff lacked Toby's experience, which is why she was ultimately hired. Defendant also contends that it genuinely believed its proffered reasons for promoting Toby over Plaintiff, that the Plant official acted in good faith, and that Plaintiff cannot overcome the burden to show pretext. "Step two only requires that the defendant explain its actions against the plaintiff in terms that are not facially prohibited by Title VII." *E.E.O.C. v. Flasher Co.*, 986 F.2d 1312, 1317 (10th Cir. 1992). Defendant thus satisfies this step. *See Frappied v. Affinity Gaming Black Hawk, LLC*, 966 F.3d 1038, 1058 (10th Cir. 2020) ("In the Title VII context, we have explained that the defendant does not at this stage of the proceedings need to litigate the merits of the reasoning, nor does it need to prove that the

reason relied upon was bona fide, nor does it need to prove that the reasoning was applied in a nondiscriminatory fashion.") (quotation omitted).

**C. Pretext**

Plaintiff argues that Defendant's proffered reason is pretext and that any special experience in budgeting and financial skills was not present in the vacancy announcement. Plaintiff's own citation to the Vacancy Announcement, however, ignores the explicit language of the job posting for the permanent position, where the first word in the list of duties is "budget," as in the position requires "leading the activities of a work force engaged in budget, manpower, workload, safety, metrics, and training duties." Docket No. 78, Ex. 1, p. 2. The first of nine factors for general duties, related to the knowledge required by the position, was worth 1250 points and defined as "[k]nowledge of a broad range of budget, supply, and ADP systems and programs," including the "[a]bility to identify, integrate, coordinate, and evaluate budget and training activities within those of other functional specialties." *Id.*, p. 3. The nine categories had a total possible points value of 2890, with the other eight categories together valued at 1640 points and ranging in points value from 5-450 points. *Id.*, pp. 4-5. The job posting also identified multiple supervisory factors for which Plaintiff proffers no evidence he met.[5]

Plaintiff nevertheless asserts that Toby's resume was insufficient and she was given special assistance in obtaining the temporary position that Plaintiff was denied, and which

---

[5] Neither party provided the temporary vacancy listing for the Court's reference or assessment. Plaintiff offers no argument related to the requirements of the temporary position in the context of Plaintiff's qualifications, focusing instead on the permanent position.

unfairly set her up to be given the permanent position. He argues that the Vacancy Announcement for the permanent position did not describe "a one-trick pony who only has budget experience," Docket No. 78, p. 7, ¶ 5, but that it required a broad range of skills. In support, Plaintiff quotes an email in which Toby asked Plaintiff for help with a task after she had been promoted, and also provides emails in which he was congratulated on doing good work. *Id.*, pp. 7-8, ¶¶ 6-9 Ex. 2, p. 1; Ex. 3, p. 4; Ex. 4, pp. 1-2. The Court notes that Plaintiff clearly possessed some of the skills required to do the job. But not even Plaintiff asserts that he possessed the actual budgetary and financial skills required in the job posting. Rather, he asserts they were not important. None of these arguments overcome Plaintiff's uncontested lack of qualifications for the position. His assertion that such experience does not matter does not overcome the requirement in the job description.

Furthermore, Plaintiff argues that Toby received help and guidance that he was denied and appears to quote certain emails and/or letters in support. Docket No. 78, p. 11, ¶¶ 16-17. However, Plaintiff provides no context for these quotations and does not even attach them as exhibits for the Court's reference; the Court disregards these as irrelevant.

Plaintiff further argues that he provides evidence of a pattern of gender bias, citing sworn declarations from certain former employees. At best, the collection of statements describe a job environment of supervisors exercising favoritism with certain employees, but even the sworn testimony reflects both men and women being promoted, and are unclear as to the root cause, speculating at various times that it could be age, race, gender, or some combination, but never identifying specific observations of gender bias. Docket No. 78, Exs. 6-10.

"A plaintiff demonstrates pretext by producing evidence of "such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could rationally find them unworthy of credence and hence infer that the employer did not act for the asserted non-discriminatory reasons." *Jaramillo v. Colorado Jud. Dep't*, 427 F.3d 1303, 1308 (10th Cir. 2005) (quoting *Morgan,* 108 F.3d at 1323 (quoting *Olson v. General Elec. Astrospace,* 101 F.3d 947, 951-952 (3d Cir. 1996)). "Under the personal knowledge standard, an affidavit is inadmissible if the witness could not have actually perceived or observed that which he testifies to." *Argo v. Blue Cross & Blue Shield of Kansas, Inc.*, 452 F.3d 1193, 1200 (10th Cir. 2006) (quotation omitted). None of the affidavits submitted reflect direct observation of discrimination due to Plaintiff's gender, the only surviving basis for this claim. Conjecture is insufficient at this stage of the case. *See Ledbetter v. Unified Gov't of Wyandotte Cnty. / Kansas City, Kansas*, 2023 WL 6294867, at *6 (D. Kan. Sept. 27, 2023) ("[A]ll doubts concerning pretext are resolved in the plaintiff's favor, but conjecture and bare allegations are not enough.") (citing *Jencks v. Modern Woodmen of Am.*, 479 F.3d 1261, 1267 (10th Cir. 2007)).

## V. CONCLUSION

Accordingly, Defendant's Motion for Summary Judgment and Brief in Support [Docket No. 72] is hereby GRANTED, and this action dismissed with prejudice. Furthermore, Plaintiff's Motion to Name Two Additional Witnesses [Docket No. 64] and Defendant's Opposed Motion in Limine and Brief in Support [Docket No. 67] are hereby

DENIED AS MOOT.

IT IS SO ORDERED this 28th day of October, 2026.

**HON. GERALD L. JACKSON**
**UNITED STATES MAGISTRATE JUDGE**